IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SEAN M. YOUNG,

                                                  OPINION AND ORDER

            Plaintiff,

                                                  19-cv-742-bbc

   v.

HEATHER SCHWENN, MARIA LEMIEUX,
THOMAS TAYLOR AND DARYL FLANNERY,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Pro se plaintiff Sean M. Young is proceeding in this case on claims that prison staff at Wisconsin Secure Program Facility kept him restrained in a bed and on observation status for several hours without clothing, blankets, food, water or bathroom breaks, in violation of his Eighth Amendment rights. The parties' cross-motions for summary judgment are now before the court. Dkt. #23 and Dkt. #35. As discussed below, there are disputed issues of material fact that must be resolved by a jury with respect to plaintiff's claims against defendants Heather Schwenn and Daryl Flannery. The parties' motions will be denied as to plaintiff's claims against those defendants. However, because plaintiff has submitted no evidence showing that defendants Lemieux or Taylor violated his constitutional rights, defendants' motion for summary judgment will be granted as to plaintiff's claims against Lemieux and Taylor.

      Before turning to the facts, I note that plaintiff did not file a brief in opposition to defendants' motion for summary judgment, and did not cite to specific evidence when

1

disputing defendants' proposed findings of fact. However, plaintiff submitted evidence in support of his own motion for summary judgment, including his sworn complaint and affidavits from other inmates. I have considered plaintiff's evidence to the extent that it is based on admissible documents or personal knowledge. After considering both sides' submissions, I find the following facts to be undisputed unless otherwise noted.

## UNDISPUTED FACTS

Plaintiff Sean Young was incarcerated at Wisconsin Secure Program Facility at all times relevant to this lawsuit. All defendants worked at WSPF during the relevant time: Heather Schwenn and Marie Lemieux were psychological associates in the psychological services unit; Daryl Flannery was a captain; and Thomas Taylor was a lieutenant.

On November 6, 2018, at approximately 2:40 p.m., plaintiff told defendant Schwenn that he was feeling suicidal. Plaintiff told Schwenn that November was a difficult month for him because it is the month of his and his twin sister's birthday and the month of his adopted-mother's death. Schwenn asked plaintiff whether he had an intent or plan to act on his suicidal thoughts. Plaintiff did not respond, but Schwenn decided that plaintiff should be placed on clinical observation status for his own safety.

Clinical observation status is a restrictive form of confinement. Security staff are supposed to check on inmates on observation every 15 minutes, and staff are supposed to document the inmate's behavior and status on a specific form. Inmates are also evaluated regularly by psychological services staff to assess their current thoughts of self-harm and to

determine whether they should remain on observation status. Usually, inmates placed on observation status are moved to an observation cell and are permitted very limited property. Psychological services staff determines what property is appropriate depending on the inmate's circumstances. When determining what property to permit, psychological services staff considers the following items as a "starting point": suicide-resistant clothing (e.g., smock, gown or kilt); security mat/mattress; soap and washcloth; bag meals; toilet paper; forms; and a crayon. However, staff may authorize more or less property for clinical or security reasons.

On November 6, 2018, eight other inmates in plaintiff's unit were placed on observation, making a total of 14 inmates on observation status that day. There were not enough observation cells to accommodate all of the inmates on observation status, so plaintiff was placed on observation in his assigned cell. Staff removed all of the property from his cell, and gave him only the limited property that defendant Schwenn authorized: soap; toilet paper; meals on a styrofoam tray; and a paper smock. Schwenn did not authorize a washcloth, blanket or security mat, so plaintiff had to lie down on the concrete slab in his cell wearing only a paper smock. (Schwenn says that she likely did not authorize a mattress or cloth smock because none were available due to the high number of inmates on observation status.)

According to plaintiff and other inmates who submitted declarations in support of his claims, prison staff turned the water off in plaintiff's and others' cells after he was placed on observation status. Plaintiff says that the water was turned off because prison staff thought

3

the inmates had conspired to go on observation status at the same time and were planning to flood their cells. Defendants deny that the water was turned off.

Plaintiff was still on observation status the following afternoon, November 7, and still did not have a blanket or mattress. Plaintiff says that his water was still turned off, and that he heard defendant Schwenn telling another inmate that because so many prisoners had been seeking observation status, her team was "going to play games too." Defendants deny that Schwenn made this statement or that plaintiff's water was off, but they concede that plaintiff had been without a blanket or mattress for 24 hours.

On the afternoon of November 7, plaintiff began to bang his head against his cell door out of frustration. Defendant Lieutenant Thomas Taylor was supervising plaintiff's unit at the time. At approximately 2:45 p.m., defendant Schwenn was notified that plaintiff was banging his head. Schwenn came to plaintiff's cell to assess him. (Schwenn says that plaintiff refused to speak to her, but plaintiff says that he told Schwenn that he was banging his head because he'd had no running water in his cell since the previous day.) Schwenn ordered that plaintiff be placed in a restraint bed to keep him from banging his head on his cell door. Defendant Taylor oversaw the restraint process. At approximately 3:00 p.m., plaintiff was removed from his cell and taken to another room, where his clothes were removed and he was restrained in a five-point restraint bed, with soft restraints placed on his legs and wrists, and a strap across his thighs and chest. He was restrained at approximately 3:00 p.m. A small towel was placed over his waist for privacy. Schwenn also approved a mattress, washcloth and spiffies (toothwipes).

Under Department of Adult Institution (DAI) policy, security staff must check on restrained inmates every 15 minutes. Security staff also must provide water and bathroom breaks every two hours, and range of motion exercises and meals on a regular schedule. (Defendants say that security staff, including defendant Captain Flannery, observed plaintiff every 15 minutes while he was restrained, and made a note of their observations on an observation log. Plaintiff denies that he was observed every 15 minutes and asserts that the observation log must be forged. Defendants also say that plaintiff was offered regular bathroom breaks, as well as water, food and range of motion exercises, but that plaintiff refused food, water, exercises and breaks on several occasions. Plaintiff denies this, stating that during the time he was restrained, he was denied food, water, exercises and bathroom breaks.) After plaintiff had been in bed restraints for more than eight hours, defendant Flannery came to check on him. Plaintiff asked Flannery if he could be taken out of bed restraints, but Flannery responded that plaintiff would be in bed restraints for awhile.

At approximately 1:45 a.m. on November 8, defendants Lemieux (a psychological associate) and Flannery came to assess plaintiff. Under DAI policy, psychological services staff must evaluate inmates in restraints at least every 12 hours to determine whether the inmate can be released or if the placement should be renewed. Plaintiff told Lemieux that he had no thoughts of self-harm. Lemieux told plaintiff that after he was removed from restraints, he would go back on observation status with limited property. Plaintiff was frustrated by this, and became loud and agitated. Lemieux was concerned by how angry plaintiff became, and thought that he might engage in self-harm again if he was removed

from restraints. (According to plaintiff, he told Lemieux and Flannery that he had been in restraints for nearly 12 hours without any range of motion exercises or bathroom breaks, and that his whole body was aching. Defendants deny that plaintiff reported this.) Based on her evaluation and unit staff reports of plaintiff's anger and agitation, Lemieux decided that plaintiff should remain in mechanical restraints.

Approximately four hours later, on November 8, 2018 at 5:50 a.m., plaintiff was removed from bed restraints by Captain Gardner. Plaintiff had been in restraints for approximately 15 hours at that point. After plaintiff was removed from mechanical restraints, he was taken back to his cell where he remained on clinical observation status. Plaintiff returned to his cell with only a paper smock and no mattress or blankets. (According to plaintiff, the water was still off in his cell and the toilet had feces and urine in it. He says that he'd had no water since November 6, when his water was first shut off, and he drank from the filthy toilet out of desperation.)

On November 8, 2018, at approximately 10:00 a.m., Schwenn evaluated plaintiff at his cell. Plaintiff told Schwenn that he wanted to be released from observation. (He also says that he asked to have his water turned back on, and that Schwenn told him that his unit manager was responsible for turning the water on and off, not her. But Schwenn denies that plaintiff's water was off.) Schwenn told plaintiff that she would not release him from observation status so soon after coming out of the restraint bed, but that if he maintained positive behavior through the day and night, he likely would be taken off observation status the following day.

On November 9, 2018, at approximately 1:45 p.m., Dr. Stacey Hoem evaluated plaintiff and removed him from observation status. (Plaintiff says that his water was turned back on at 3:00 p.m. on November 9, after he was taken off observation status by Hoem.)

OPINION

The Eighth Amendment prohibits cruel and unusual punishment, and imposes a duty on prison officials to provide humane conditions of confinement and to ensure that reasonable measures are taken to guarantee inmate safety and prevent harm. Farmer v. Brennan, 511 U.S. 825, 834–35 (1994). The Eighth Amendment also requires prison officials to provide prisoners "the minimal civilized nature of life's necessities," including adequate food, clothing, shelter and medical care. Farmer, 511 U.S. at 834; Gray v. Hardy, 826 F.3d 1000, 1005 (7th Cir. 2016); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir. 2006). Prison officials violate the constitution if they are "deliberately indifferent to adverse conditions that deny 'the minimal civilized nature of life's necessities.'" Farmer, 511 U.S. at 834. Prison officials also violate the Eighth Amendment if they subject a prisoner to a condition that "exceeded contemporary bounds of decency of a mature, civilized society." Lunsford v. Bennett, 17 F.3d 1574, 1579 (7th Cir. 1994).

Plaintiff is proceeding on claims that defendants Schwenn, Taylor, Flannery and Lemieux violated his Eighth Amendment rights by subjecting him to unconstitutional conditions of confinement. Plaintiff alleges that Schwenn placed him in an observation cell with no running water, mattress, blankets or clothing, and later ordered that he be physically

7

restrained for several hours without clothing. These allegations alone are insufficient to sustain an Eighth Amendment claim against Schwenn or the other defendants. Defendants have submitted unrefuted evidence that plaintiff was placed on observation status with limited property and later, in restraints, for his own safety. Plaintiff concedes that he was feeling suicidal and that suicidal inmates are frequently placed on observation status so that they may be closely monitored. Cavalieri v. Shepard, 321 F.3d 616, 621 (7th Cir. 2003) ("[P]risons and jails have developed procedures for dealing with prisoners who display suicidal tendencies, such as removing items that could be used as a suicide weapon, like sheets or a sturdy telephone cord, or not leaving those prisoners unattended."); Jenkins v. Miller, No. 17-CV-25-BBC, 2018 WL 6788527, at *8 (W.D. Wis. Dec. 26, 2018) ("[P]laintiff's conditions of confinement claim must be considered in the context of the plaintiff's status at the time.").

In addition, plaintiff's placement on observation status and in restraints was temprorary. Both this court and the Court of Appeals for the Seventh Circuit have allowed Eighth Amendment claims involving similar conditions to proceed to trial only if they involved deprivations that lasted for longer time periods and also subjected the prisoner to temperature extremes or unsanitary conditions. Compare Townsend v. Cooper, 759 F.3d 678, 687 (7th Cir. 2014) (prisoner was "completely naked, with no clothing, shoes, bedding, linens, mattress, mail or legal materials" for periods totaling 259 days); Vinning-El v. Long, 482 F.3d 923, 924 (7th Cir. 2007) (prisoner stripped of his clothing and property and placed in segregation cell without working sink or toilet and covered with water, blood and

feces for six days); Gillis v. Litscher, 468 F.3d 488, 489-90 (7th Cir. 2006) (prisoner placed in segregation cell, naked with no mattress or other bedding and limited food and personal hygiene items for 12 days); with Jackson v. Vernon Cty., No. 20-CV-917-WMC, 2021 WL 1753960, at *3 (W.D. Wis. May 4, 2021) ([S]hort-term denials of exercise do not violate the constitution."); Jenkins, No. 17-CV-25-BBC, 2018 WL 6788527, at *8 (harsh conditions that were temporary did not support constitutional claim); Alfred v. Bryant, 378 Fed. Appx. 977, 980 (11th Cir. 2010) ("Objectively speaking, sleeping on a steel bed without a mattress for eighteen days, though uncomfortable, is not so extreme as to violate contemporary standards of decency.").

However, plaintiff also alleges that he was denied food, bathroom breaks and movement during the 15 hours that he was restrained, and that he was denied water for nearly three days. Plaintiff's allegation that he was denied water for multiple days distinguishes this case from those involving temporary or less harsh conditions of confinement, particular because plaintiff alleges that he had to drink filthy toilet water to avoid dying of dehydration. Defendants argue that the observation logs and their own declarations are sufficient proof that plaintiff was provided with food, water, bathroom breaks and range of motion exercises, but plaintiff argues that the logs were falsified. Although it is difficult to believe that plaintiff was able to survive multiple days without water, I must accept plaintiff's allegations as true at summary judgment. Orlowski v. Milwaukee Cty., 872 F.3d 417, 419 (7th Cir. 2017) ("It is up to the jury to determine the credibility of witnesses and weigh the evidence."). If a jury believed plaintiff's version of

events, the jury could conclude that plaintiff was subject to unconstitutional conditions of confinement.

The final question is whether plaintiff submitted sufficient evidence to show that each defendant could be liable for the harsh conditions of confinement and in particular, the denial of water. Plaintiff states that Flannery was responsible for providing food and water while he was restrained, but failed to do so. He also states that he told Schwenn that he had been denied water, but that she disregarded his requests for help. If the jurors believed plaintiff, they could conclude that Flannery and Schwenn violated plaintiff's Eighth Amendment rights by failing to take reasonable steps to provide him with food and water while he was restrained and on observation status. However, plaintiff has submitted no evidence stating that he told defendants Taylor or Lemieux that he had been denied food and water for an extended period of time or that those defendants were responsible for providing him food and water. Accordingly, plaintiff's evidence does not support a constitutional claim against either Taylor or Lemieux.

In sum, because the parties' factual disputes cannot be resolved at summary judgment, I must deny both sides' motions for summary judgment. United States v. Luce, 873 F.3d 999, 1005 (7th Cir. 2017) (summary judgment appropriate only when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law") (citations omitted). That said, I note that the parties' versions of events are strikingly different. The parties should be aware that if evidence is introduced before or at trial, such as video footage of the events at issue in this case, that proves that either side has

knowingly submitted false statements to the court, I will consider sanctioning the dishonest party. Rivera v. Drake, 767 F.3d 685, 687 (7th Cir. 2014) (imposing monetary sanction on prisoner who made false statements to court and referring the case to the United States Attorney for potential prosecution for perjury).

ORDER

IT IS ORDERED that

1. Plaintiff Sean M. Young's motion for summary judgment, dkt. #23, is DENIED.

2. The motion for summary judgment filed by defendants Heather Schwenn, Thomas Taylor, Daryl Flannery and Maria Lemieux, dkt. #35, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to plaintiff's claims against defendants Taylor and Lemieux. The motion is DENIED in all other respects.

Entered this 18th day of August, 2021.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge